Filed 8/26/14  P. v. Paz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058819 |
| v. | (Super.Ct.No. FVI1202427) |
| JUAN CARLOS PAZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jules E. Fleuret, Judge.  Affirmed.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Juan Carlos Paz of one count of false imprisonment using violence. (Pen. Code,[1] § 236.) The trial court found true the special allegations that defendant was convicted of two serious or violent felonies within the meaning of the "Three Strikes" law (§ 667, subds. (b)-(i)), and also found true that he had served three prison terms (§ 667.5, subd. (b) [one-year enhancement]). Defendant was sentenced to state prison with an aggregate term of eight years.

Defendant contends on appeal that the prosecutor committed prejudicial misconduct by arguing on rebuttal that the jurors were charged with determining whether a crime was committed in their community, which was an appeal to the passions or prejudices of the jury. We find no reversible error, and affirm the judgment.

## I.

## FACTS AND PROCEDURAL HISTORY

### a. Evidence At trial

Defendant was a tenant in the victim's home. On the morning of May 14, 2011, defendant was in his bedroom, and the victim was at home in another part of the house. Defendant heard someone knock at the front door, and after opening the door, discovered two unknown men standing there. The men told the victim that they were looking for defendant. The victim turned around to walk toward defendant's room to let him know that he had visitors. As the victim turned around, the men entered the house behind him, struck the back of the victim's head, and the victim fell to the ground.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

At some point, defendant left his room, came up to the victim and punched the victim in the stomach several times. One of the men told the victim to stop charging defendant rent. Defendant discharged a Taser device against the victim's neck. The victim fell to the floor. Although defendant disputed participating in the attack, at trial, the victim identified defendant as having done so.

While the victim was on the floor, defendant used plastic zip-ties to bind the victim's wrists together behind his back, and his ankles together. The victim did not own or have plastic zip-ties in his home at that time. He lost consciousness at some point. When the victim regained consciousness, he observed the men carrying some of defendant's clothes out of the home. He saw the men shut the front door and lock it, and later exit the home through the garage. After they exited the home, the victim knocked a telephone to the floor and called 911 with his tongue. Police officers arrived at the victim's home and after documenting his condition as they found him, they untied him. The victim had bruises to the right eye, head, neck, and chest.

By the time of trial, defendant had changed his appearance from the way it was on the date of the incident. Specifically, defendant had grown long hair and a long beard. The victim had not seen or heard from defendant between the day of the incident until the preliminary hearing. There was a discrepancy in the record about how much, if any, rent defendant had paid the victim prior to the date of the incident. There was also a discrepancy in the victim's description and identification of the two men other than defendant who participated with defendant in the beating.

### b.  <u>Jury Instructions and Closing Argument</u>

Prior to the presentation of evidence, the jury received instructions from the court regarding trial procedure, evidence, and the import of argument from counsel. Specifically, the jury was instructed that the verdict was to be based solely on the evidence presented during the trial and the law given by the judge.  Jurors were to keep an open mind during the trial, and to not be influenced by bias, sympathy, prejudice, or public opinion.  They were instructed regarding the requirement for conviction that there be proof beyond a reasonable doubt.  The court explained that the jury was to consider only evidence, and that the argument of counsel was not evidence.

Following the closing of evidence but before closing arguments from counsel, the trial court again instructed the jury and gave them the law regarding the counts alleged against defendant.  Jurors were instructed to avoid bias, to follow the court's instructions, and to impartially decide the case based upon the evidence.  The court again explained what evidence was, and stated that attorney arguments are not evidence.

The prosecutor then began closing argument.  The prosecutor explained to the jury that it was his burden to convince 12 people that a crime happened in their community. He explained the role of the jury, including that they decide the facts with integrity.  After a discussion of the evidence to support the specific counts alleged, the prosecutor also reiterated that the jury was to focus on the evidence, and noted that argument of counsel was not evidence.  He indicated that the jury alone was to evaluate the credibility of witnesses.  He discussed the requirement of the beyond reasonable doubt standard for

4

criminal convictions. The prosecutor then argued that the evidence supported a verdict of guilty as to the counts alleged.

In the defendant's closing argument, defendant argued that there were credibility issues with the victim's testimony, specifically as to inconsistent statements about whether defendant had paid rent, descriptions of the other men who participated in the attack on the victim, and how the incident occurred, among other issues.

The sole comment that defendant contends was misconduct was made during rebuttal. The prosecutor began with a response to the defendant's central theme that the victim was lying about the attack. In support of his argument, the prosecutor referred to the victim's testimony that the two men who had come to the house and initiated the attack had asked for defendant directly. When defendant came out of his room he pulled out zip ties, tied the victim up, and Tased him. There were visible signs on the victim's face of the beating when the police arrived.

The prosecutor then argued:

"The—when we were going through jury selection, one of the things—one of the analogies I used, I referred to some of you as having children, if you have children and the cookies, and if you have cookie crumbs leading to their room. Essentially what we've heard in terms of the defense in this case is we're going to blame the person who made the cookies. How about blame that person because they made cookies. We're going to blame [the victim] because he's the only one we can blame. But we have crumbs. We have crumbs leading all the way across the table to that man, leading across

the table to Juan Carlos Paz. Okay? That's the evidence of this crime in addition to what you heard. Okay? This is leading us directly to that man. We're not going to blame the man who was tied up and beaten in his own home. *We need to hold him accountable. You, as members of this community charged with determining whether a crime was committed in your community, must make the determination—*

"[DEFENSE COUNSEL]: I object. The prosecutor is trying to play to the passions of the jury by referencing their community.

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: It's improper argument.

"THE COURT: Overruled.

"[PROSECUTOR:]—are going to be asked to make that determination. Okay? It happened here, you live here."

Defendant contends that this argument was prosecutorial misconduct under both the federal and state standards.

## II.

## DISCUSSION

Defendant argues that the prosecutor committed reversible error by referencing during closing argument in the guilt phase that the jury constituted members of the community charged with determining whether a crime was committed in their community. Defendant contends that "by exhorting the jury to hold [defendant] accountable because they lived in the community where the crime occurred, the

6

prosecutor appealed to the self interests of the jury as members of the public." Defendant posits that "the prosecutor's argument was not an appeal to restore law and order to a city block [as was in *People v. Adanandus* (2007) 157 Cal.App.4th 496], but instead it was a direct appeal to the jurors to 'hold him accountable,' because what he did occurred in 'your [the jury's] community.'"

The state and federal standards for review of prosecutorial misconduct are well defined. "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.'" (*People v. Tully* (2012) 54 Cal.4th 952, 1009 (*Tully*).) There is a violation of California law if a prosecutor's misconduct involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. (*Id*. at pp. 1009-1010.) An objection must be raised and an admonition sought for the issue to be preserved on appeal. (*Id.* at p. 1010.)

California courts address the question of prosecutorial misconduct in argument before the jury as follows: "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1202-1203 (*Cole*).) Prosecutors are given wide latitude during argument to make vigorous but fair comment on the evidence, and reasonable inferences or deductions to be drawn from them. (*People v. Gamache* (2010) 48 Cal.4th 347, 371.) Commentary on the role of the jury, including acknowledgement of the onerous task faced in applying the law is not improper

7

argument. (*People v. Cornwell* (2005) 37 Cal.4th 50, 92, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) Emphasis that evidence of guilt is overwhelming, and that a jury made up of members of the community should not be distracted by irrelevant circumstances or arguments, is also not improper. (*People v. Redd* (2010) 48 Cal.4th 691, 743-744.)

We review de novo a defendant's claim of prosecutorial misconduct. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 860.) "'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Brown* (2003) 31 Cal.4th 518, 553-554 (*Brown*).) We consider the prosecutor's remarks in context of the entire record. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 665-666.) We presume, in the absence of evidence to the contrary, that the jury understands and follows instructions from the trial court. (*People v. Fauber* (1992) 2 Cal.4th 792, 823.) We presume that jurors treat the court's instructions as statements of law, and the arguments of the prosecutor as words spoken by an advocate in an attempt to persuade. (*People v. Thornton* (2007) 41 Cal.4th 391, 441.)

Defendant preserved the issue as to the language at issue for appellate review. (*People v. Chatman* (2006) 38 Cal.4th 344, 380.) While he did not seek an admonition, such an effort would have been futile as the court had overruled his objection. (*Ibid.*)

Defendant's contention takes the comments out of the immediate context as well as the context of the entire record, and thereby mischaracterizes the prosecutor's closing argument. Defendant's contention ignores what preceded the remark at issue:

8

defendant's argument that the victim himself was lying about or responsible for the attack. The prosecutor's argument was a response that there was evidence of guilt beyond a reasonable doubt as to the charged offense: "Essentially what we've heard in terms of the defense in this case is . . . blame [the victim]. . . . But we have [evidence] leading . . . to [defendant]. . . . That's the [circumstantial] evidence of this crime in addition to [the testimony] you heard . . . leading us directly to [defendant]. We're not going to blame the [victim]. We need to hold [defendant] accountable. You, as the members of this community charged with determining whether a crime was committed in your community, must make the determination."

The prosecutor's argument was not an improper appeal to the self interest, or to the passions or prejudice of the jury, but instead a reminder of their duty as members of their community serving as jurors to follow the chain of evidence that led to the defendant. Thus, in the context of the evidence presented, jury instructions given, and whole argument of both counsel, the prosecutor's remark was a fair comment on the state of the evidence. There was no reasonable likelihood that the jury applied the comment in an improper or erroneous manner, and thus no prosecutorial misconduct under the state standard. (*Cole*, *supra*, 33 Cal.4th at pp. 1202-1203; *Brown*, *supra*, 31 Cal.4th at pp. 553-554.) Nor did the comment so infect the trial with unfairness as to be a denial of defendant's right to due process, and there was no prosecutorial misconduct under the federal standard. (*Tully*, *supra*, 54 Cal.4th at pp. 1009-1010.) Prior to the offending comment, the jury heard the prosecutor restate that the jury's decision had to be based on

9

evidence and that counsel's arguments were not evidence, and heard the judge instruct them to the same effect. We presume that they understood these instructions, and distinguished evidence from argument. (*People v. Fauber*, *supra*, 2 Cal.4th at p. 823; see also, *People v. Thornton*, *supra*, 41 Cal.4th at p. 441.)

Moreover, prosecutorial misconduct does not require reversal unless it subjects the defendant to prejudice. (*People v. Warren* (1988) 45 Cal.3d 471, 480.) "[I]n the absence of prejudice to the fairness of a trial, prosecutor misconduct will not trigger reversal." (*People v. Bolton* (1979) 23 Cal.3d 208, 214.) We find the conduct complained of did not cause prejudice under any harmless-error standard. (See *People v. Zambrano* (2004) 124 Cal.App.4th 228, 243 [Fourth Dist., Div. Two] [reasonable probability standard]; *People v. Cook* (2006) 39 Cal.4th 566, 608 [harmless beyond a reasonable doubt standard for claim of error of federal constitutional dimension].) As discussed, *ante*, the context and instructions to the jury minimized any impact that an appeal to community self-interest by the prosecutor might have had. Therefore, defendant cannot show prejudice.

## III.

## <u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLSIHED IN OFFICIAL REPORTS

<u>RAMIREZ</u>
P. J.

We concur:

<u>KING</u>
J.

<u>CODRINGTON</u>
J.